# SUPREME JUDICIAL COURT,

IN THE

## COUNTIES OF WASHINGTON AND

## AROOSTOOK.

### ARGUED AT JULY TERM, 1843.

---

### THE COMMERCIAL BANK *versus* ST. CROIX MANUFACTURING COMPANY.

If an incorporated manufacturing company, by their agent, draw a bill upon their treasurer and indorse the same, a demand upon him, and his refusal to make payment, have the effect against the company, in order to charge them as indorsers, of both demand and notice.

If the agent of an incorporated manufacturing company be clearly authorized to issue negotiable business paper, indorsees, not privy to its origin, would not be bound to look into the particular transaction giving rise to the existence of a note or draft; but would have a right to presume *that it* had been drawn in pursuance of the authority delegated.

ASSUMPSIT on three bills of exchange, purporting to be drawn by the defendants, by N. Smith, jr. their agent, on B. F. Copeland, their treasurer, by him accepted, and indorsed by the defendants in the same manner, and by others, and discounted by the plaintiffs, an incorporated bank in New Brunswick, and sent for collection to a bank in Boston.

A demand of payment was regularly made by a notary on Copeland, but a question was raised, whether due notice was given.

The defendants also denied the authority of Smith to bind the company, in the drawing and negotiating of these bills. Smith was the agent of the company. The authority conferred upon him by vote was as follows :

"Boston, July 6, 1837. It was also voted, that all notes, drafts or contracts, made by the agent, Noah Smith, jr. to pay any liabilities of the company, or to purchase goods, or to raise money for the use of the company, shall be valid and binding on this corporation." The facts appear sufficiently in the opinion of the Court. A default was entered by consent, judgment to be rendered thereon, if the action could be maintained ; and the default to be taken off, and a nonsuit entered, *if it could not.*

*J. Granger* argued for the defendants, citing on the first point, *Freemen's Bank* v. *Perkins*, 6 Shepl. 292 ; Bayley on Bills, 269 ; 3 Wend. 276. And on the second point, Story's Ag. 158 ; 1 Pick. 215 ; 7 Wend. 31 ; 7 Conn. R. 214.

*Bridges* argued for the plaintiffs, citing Chitty on Bills, (7th Ed.) 184 ; 11 Wend. 87 ; 3 Fairf. 354 ; 14 Maine R. 444 ; 1 Pick. 373 ; 16 Maine R. 439.

The opinion of the Court was by

WHITMAN C. J. — The reliance to sustain this action is upon three bills of exchange, accepted by the treasurer of the defendants, and payment having been duly demanded of him. No question can fairly arise in the case concerning notice. The treasurer is the disbursing officer, having of course the possession of the funds of the defendants. His knowledge that the drafts had been dishonored must be considered as notice to them.

It is objected, however, that Smith, who, as agent to the defendants, drew the bills in question, did it for the accommodation of Duncan Barber & Co., and without authority for the purpose ; and that he only had authority to draw bills to raise money for the use of the company, and not for the accommodation of others. But the mode, in which Smith was to raise

money for the company, was without any limitation or specification, except that it was to be by notes or drafts. He was therefore authorized to raise money, as the necessities of the company might require, in any mode usually adopted among men of business in such cases. If it was by obtaining loans of banks, it must ordinarily be by the aid of friendly indorsers, or accommodation drawers; and this is a mode often adopted by business men to raise funds. If the defendants, by their agent, adopted this course, the favor might ordinarily be expected to be reciprocated. Hence it might, perhaps, be deemed within the scope of the authority delegated to the agent, to interchange the names of the defendants with others upon accommodation papers; and, if such should be deemed to be the case, the authority given to Smith might authorize him to make the draft in question.

But whether so empowered or not, he was clearly authorized to issue business papers, in the form of this draft, and when so issued it would be negotiable; and indorsees, not privy to its origin, would be bound only to look to the general scope of the authority delegated to the agent to draw; and finding it sufficient, would not be bound to look into the particular transaction giving rise to the existence of the draft. They would have a right to presume that it had been drawn in pursuance of the authority delegated. Smith appearing to be the general agent of the defendants, and fully clothed with all their power in reference to the object specified; and the defendants being a corporation which could not act otherwise than by its agent, it was right for the plaintiffs, seeing a draft of the defendants in circulation, to conclude that it had been issued in pursuance of the powers delegated. Smith may fairly be considered as having the same power, as to making notes and drafts, that partners have in reference to each other. One partner might make a note or bill in the partnership name, for his own private debt, and put it in circulation; and in the hands of innocent indorsees it would be available against the firm. The reason is, that each of them has the power generally to issue paper in the name of the firm; and when issued

Commercial Bank v. St. Croix Man. Co.

and put in circulation, indorsees, not privy to its origin, are under no obligation to inquire farther than to ascertain that they are general partners. The maxim here applies, that he, who, although without intentional fraud, has put it in the power of one man to impose upon another innocent person, shall himself sustain the consequences of his own misplaced confidence. Here the defendants had put into the hands of Smith the most plenary power to draw in their names, and put in circulation such drafts as he might draw. They are then, the authors of the power, without intentional fraud to be sure, which Smith had to impose upon other innocent persons; and the plaintiffs, being such innocent persons, must have a right to recover against them, if there be no other ground of defence; although it should be admitted that Smith may have abused his authority in causing the drafts to be issued.

But in this case the drafts do not appear to have been drawn wholly for the accommodation of Duncan Barber & Co. The witness, Green, testifies, that he believes one half of the money realized from the negotiation of the draft was received by the defendants. Green was evidently in a situation to become possessed of a knowledge of the proceedings of the defendants. He was their clerk and book-keeper. He, moreover, says these drafts, as he believes, were taken account of, and entered in the books of the defendants. If the facts were otherwise, than as Green believes them to have been, it would certainly be easy for the defendants to disprove them by Smith, and by Barber & Co., and by a production of their books. It is true Green speaks only as to his belief; but considering his opportunity for knowing the facts, and the absence of any effort on the part of the defendants to prove the contrary, it cannot be doubted that the facts were in accordance with his belief.

*Judgment on the default.*